IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. _:__-cv-___-__

| | | |
|---|---|---|
| AXEL ENRIQUE CAMPOS ARROYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| REAL CONSTRUCTIONS, LLC, and VICTOR MANUEL MARTINEZ GARCIA, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. INTRODUCTION

1. Plaintiff, a former employee of Defendants, brings this action for breach of contract based on Defendants' failure to comply with a court-approved settlement agreement purporting to resolve Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq. Plaintiff was employed by Defendants in 2022 for construction-related work in and/or near Wake County, North Carolina. After a lawsuit was initiated on July 28, 2023, the parties entered into a settlement agreement, which was approved by this Court on April 1, 2024. Under that agreement, Defendants were required to pay Plaintiff $6,382.50 in back wages, liquidated damages, costs, and attorneys' fees. However, Defendants have failed to make the required payment to date. Plaintiff now seeks monetary and injunctive relief due to Defendants' breach of the court-approved settlement agreement.

1

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337, 29 U.S.C. § 216(b), and 28 U.S.C. § 1367(a), as Defendants' breach of contract implicates questions concerning federal law, specifically the FLSA, and commerce.

3. Jurisdiction is also conferred upon this Court pursuant to the express terms and language of the court-approved settlement agreement between Plaintiff and Defendants, attached hereto as Exhibit A, mandating that "any and all claims arising from or related to this Agreement or its breach shall be brought ... in the Eastern District Court of North Carolina." Ex. A ¶ 7.

## III. VENUE

4. Venue over this action lies in this Court pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's action occurred in or around Wake County, a county listed in 28 U.S.C. § 113(a).

## IV. PLAINTIFF

5. Plaintiff Axel Enrique Campos Arroyo is a natural person who was employed by Defendants in or around Wake County, North Carolina, in 2022 to perform construction and related work for Defendants.

6. At all times relevant to this Complaint, Defendants employed Plaintiff to perform construction and related work for Defendants in or around Wake County, North Carolina, within the meaning of 29 U.S.C. §§ 203(d) and 203(g) and N.C. Gen. Stat. §§ 95-25.2(3), 95-25.2(5), and 95-25.2(18).

7. At all times relevant to this Complaint, Plaintiff was engaged in commerce or in the production of goods for commerce, or was employed in an enterprise engaged in commerce or in the production of goods for interstate commerce, within the meaning of 29 U.S.C. § 203(s)(1)(A) of the FLSA.

V. DEFENDANTS

8. Defendant Real Constructions, LLC ("Real Constructions"), is a corporation organized in 2018 under the laws of the state of North Carolina. Victor Manuel Martinez Garcia, 1503 Westwood Avenue W, Wilson, North Carolina 27893, is its registered agent for service of process.

9. At all times relevant to this Complaint, Defendant Real Constructions was and is a corporation that:

    a. "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A);

    b. employed workers, including Plaintiff, as that term is defined in and by the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5); and,

    c. had the power and authority and/or exercised the power and authority to direct, control, and/or supervise the work performed by Plaintiff for Defendant Real Constructions at or on its construction worksites.

10. Defendant Victor Manuel Martinez Garcia ("Martinez Garcia") has been the founding and sole member, owner, and registered agent of Defendant Real Constructions since 2018, including, but not limited to, in the year 2022.

11. At all times relevant to this Complaint, Defendant Martinez Garcia:

a. was and is an employer of workers, including Plaintiff, as that term is defined in and by the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5); and,

b. had the power and authority and/or exercised the power and authority to direct, control, and/or supervise the work performed by Plaintiff for Defendant Real Constructions at or on its construction worksites.

12. According to the Annual Report Defendant Real Constructions filed with the Secretary of State on July 3, 2025, Victor Manuel Martinez Garcia's current street and mailing address, and upon information and belief his dwelling or usual place of abode, is 1503 Westwood Avenue W, Wilson, North Carolina 27893. *See* Ex. B.

13. At all times relevant to this Complaint, Defendants were joint and individual employers of the Plaintiff within the meaning of the FLSA and accompanying regulations, 29 U.S.C. §§ 203(d) and (g) and 29 C.F.R. § 791.2, and the NCWHA, N.C. Gen. Stat. §§ 95-25.2(3), 95-25.2(5), and 95-25.2(18).

## VI. FACTUAL ALLEGATIONS

14. Defendants employed Plaintiff to perform construction and related work in or around Wake County in 2022. *See Campos Arroyo v. Lamm Farms, LLC*, 5:23-cv-00417-BO-BM; Ex. C ¶¶ 21, 31, 34, 46, 70, 79, 95-106.

15. Defendants supervised Plaintiff's work for Defendants in 2022. *See Campos Arroyo v. Lamm Farms, LLC*, 5:23-cv-00417-BO-BM; Ex. C ¶¶ 21, 46, 70, 79, 95-106.

4

16. During Plaintiff's 2022 employment by Defendants, Defendants violated Plaintiff's rights under the NCWHA by failing to pay Plaintiff the promised wage rate of $14.00 per hour for all hours Plaintiff worked for Defendants.  *See* Ex. C ¶¶ 138, 143, 145-147.

17. During Plaintiff's 2022 employment by Defendants, Defendants violated Plaintiff's rights under the FLSA by failing to pay Plaintiff the required overtime wage rate of one and one-half times Plaintiff's regular rate for all hours Plaintiff worked for Defendants in a workweek in excess of forty.  *See id.* ¶¶ 126-34.

18. As a result of those violations, as well as other violations perpetrated by other associated employers, Plaintiff initiated a lawsuit against Defendants in this Court on July 28, 2023.  *See Campos Arroyo v. Lamm Farms, LLC*, 5:23-cv-00417-BO-BM; Ex. C.

19. In Plaintiff's above-described lawsuit filed on July 28, 2023, undersigned counsel appeared and served as local counsel for Plaintiff, pursuant to Local Civil Rule 83.1(d).

20. Attorney Christian E. Dysart, of Dysart Willis, and attorney Bridget A. Blinn-Spears, of Maynard Nexsen, P.C., represented Defendant Real Constructions throughout the course of the action initiated by Plaintiff on July 28, 2023.  *See Campos Arroyo*, D.E. 12, D.E. 21.  *See* Exs. D and E.

### A.  SETTLEMENT AGREEMENT

21. On December 20, 2023, Defendant Real Constructions, by and through counsel, filed a Joint Motion for Approval of Settlement Agreement and Attorneys' Fees and for Dismissal With Prejudice with the Court.  *See Campos Arroyo*, D.E. 36.

22. The settlement agreement between Plaintiff and Defendant Real Constructions was filed with the Court in conjunction with that Joint Motion for Approval of Settlement Agreement,

*see id.*, D.E. 37-1, along with a supporting memorandum of law, D.E. 37, and declaration of Trent R. Taylor, lead counsel for Plaintiff, D.E. 37-2.

23. Defendant Martinez Garcia, "intending to be legally bound," "voluntarily and with full understanding of the contents" of the agreement executed the settlement agreement for and on behalf of Defendant Real Constructions. D.E. 37-1 ¶ 13; Ex. A ¶ 13.

24. The settlement agreement was entered into "for the purpose of terminating all controversy between the parties and avoiding the expense of further litigation," Ex. A ¶ 3, and "to resolve all disputes between" the parties. *Id.* p. 1.

25. Pursuant to the settlement agreement, Plaintiff was to "remise, release and forever discharge" (hereinafter "Plaintiff's release") Defendants "from any and all actions" arising from Plaintiff's employment by Defendants, "for and in consideration of the payments" mandated by the agreement. *Id.* ¶ 5.

26. Plaintiff's release was "expressly contingent on the payment by Defendant[s] to Plaintiff of the amounts described in Paragraph 1" of the settlement agreement, however. *Id. See infra* ¶ 29.

27. Defendants and Plaintiff "understood and agreed ... that [the settlement agreement] express[ed] a full, final and complete settlement[,] ... and that it may be specifically enforced in court." Ex. A ¶ 9.

28. On April 1, 2024, after Defendant Real Constructions, by and through attorney Blinn-Spears, filed a proposed order in connection with the Joint Motion for Approval of Settlement Agreement, *see Campos Arroyo*, D.E. 42, the Court issued an Order granting the same joint motion for approval of settlement agreement and dismissing with prejudice Plaintiff's case with respect to Defendant Real Constructions. *See id.*, D.E. 45; Ex. F.

29. Pursuant to the settlement agreement approved by the Court, *see id.*, Defendant Real Constructions was to pay the gross sum total of $6,382.50 to Plaintiff, through Plaintiff's counsel, of which total $2,475.00 was to be paid in back wages to Plaintiff, $2,475.00 was to be paid in liquidated damages to Plaintiff, $432.50 was to be paid to counsel for court costs and fees, and $1,000.00 was to be paid for attorneys' fees. Ex. A ¶ 1.

30. The $2,475.00 in back wages Defendant Real Constructions was to pay to Plaintiff pursuant to the court-approved settlement agreement was for outstanding wages Defendant owed Plaintiff under the FLSA and NCWHA. *See id.*

31. The $2,475.00 in liquidated damages Defendant Real Constructions was to pay to Plaintiff pursuant to the court-approved settlement agreement were liquidated damages Defendant owed Plaintiff pursuant to the FLSA, 29 U.S.C. § 216(b), and NCWHA, N.C. Gen. Stat. § 95-25.22(a1). *See id.*

32. Defendant Real Constructions was to pay the total of $6,382.50 to Plaintiff in "consideration of the mutual promises contained in [the settlement agreement], and for other good and valuable consideration, the receipt and sufficiency of which" was expressly acknowledged by Defendant Real Constructions. Ex. A p. 1.

33. Pursuant to the settlement agreement approved by the Court, "[w]ithin five (5) days of the clearing of all check payments made under th[e] Agreement as outlined" in paragraphs 29 through 31 above, the parties were to file a joint stipulation of dismissal with prejudice with the Court. *Id.* p. 4 ¶ 6.

34. Notwithstanding that settlement agreement provision described above in paragraph 33, the proposed order filed with the Court on April 1, 2024, had the Court approve the settlement

7

agreement and contemporaneously dismiss the case with prejudice, in contravention of the settlement agreement provision described in paragraph 33. *See Campos Arroyo*, D.E. 42.

35. As a result of that oversight and discrepancy between the settlement agreement, *see* Ex. A p. 4 ¶ 6, and the proposed order filed with the Court on April 1, 2024, *see Campos Arroyo*, D.E. 42, the case was dismissed with prejudice before Plaintiff ever received the payments mandated by the Court-approved settlement agreement. *See id.*, D.E. 45; Ex. F.

36. Pursuant to the settlement agreement approved by the Court on April 1, 2024, "any and all claims arising from or related to th[e] Agreement or its breach shall be brought ... in the Eastern District Court of North Carolina during the first two years following Court approval of the Settlement Agreement." Ex. A p. 4 ¶ 7.

37. Pursuant to the settlement agreement approved by the Court, the "party in material breach shall become liable for any and all reasonable attorneys' fees, expenses, and costs incurred in connection with enforcing this Settlement Agreement." *Id.* p. 3 ¶ 4.

      B.      DEFENDANTS' BREACH OF SETTLEMENT AGREEMENT

38. Though the settlement agreement was approved by the Court on April 1, 2024, to date Plaintiff has not received any amount of any of the payments required by the court-approved settlement agreement and described above in paragraphs 29 through 31. *See id.* ¶ 1.

39. On April 18, 2024, Plaintiff's undersigned counsel emailed attorney for Defendant Real Constructions, Bridget Blinn-Spears, inquiring regarding the status of the payments required by the court-approved settlement agreement. *See* Ex. G pp. 1-2. There was no response to that email until May 1, 2024.

40. On May 1, 2024, Plaintiff's counsel again emailed attorney for Defendant Real Constructions Blinn-Spears requesting that she "let [us] know as soon as possible when we can

8

expect to receive the payments described in ¶¶ 1-2 of the approved Settlement Agreement and required by the Agreement." *Id.* p. 1.

41. Later that same day, May 1, attorney Blinn-Spears responded that she "anticipate[s] having them [the payments] no later than the end of this month." Ex. H p. 8.

42. On May 24 and again on June 6, 2024, Plaintiff's undersigned counsel again sent emails to attorney Blinn-Spears inquiring about the status of the payments required by the court-approved settlement agreement. *See id.* pp. 6-7. There was no response to either email until June 14, 2024.

43. On Friday, June 14, 2024, attorney Blinn-Spears sent an email requesting "until the end of next week" to provide an update on the payments required by the settlement agreement. *Id.* p. 6.

44. On June 18, 2024, less than three (3) months after Court approval of the settlement agreement, *see* Ex. F, attorney Blinn-Spears sent an email informing that Defendant Real Constructions was "experiencing significant financial challenges and cannot make the full payment at this time," Ex. H p. 5, however Defendant "Mr. Martinez [Garcia] has assured me [attorney Blinn-Spears] that he will drop off cashier's checks or money orders today or tomorrow for the liquidated damages and court costs, which I [attorney Blinn-Spears] will have hand-delivered to your office." *Id.*

45. In that same June 18, 2024 email, counsel for Defendant Real Constructions, attorney Blinn-Spears, informed that Defendant "Mr. Martinez [Garcia] feels confident he will be able to pay the balance of the amounts due [under the settlement agreement] next month." *Id.*

46. Notwithstanding attorney Blinn-Spears' June 18, 2024 email, to date Plaintiff has not received from Defendants any of the amounts mandated by the court-approved settlement agreement. *See* Ex. A ¶ 1; Ex. F.

47. On June 23, 2024, attorney Blinn-Spears sent an email stating that Defendant "Real Constructions has assured me that I will have at least the first set of payments [for liquidated damages and court costs] by Tuesday [June 25], and we will hand deliver them to your office once we receive them." Ex. H p. 3.

48. In that same June 23 email, attorney Blinn-Spears informed that "[i]t is possible they [Defendants] may be able to pay all of it [on June 25]." *Id.*

49. Notwithstanding attorney Blinn-Spears' June 23 email, to date Plaintiff has not received payment of any of the amounts mandated by the court-approved settlement agreement. *See* Ex. A ¶ 1; Ex. F.

50. On June 27, 2024, attorney Blinn-Spears sent an email stating that: Defendant Martinez Garcia's "mother died over the weekend, and he was out of town with poor cell reception;" Defendant Martinez Garcia "was going to call his wife to arrange for her to bring me the payments, but I have not heard back from him;" and that attorney Blinn-Spears would "continue to follow-up and let you know as soon as I have an update." Ex. H p. 2.

51. In that same June 27 email, attorney Blinn-Spears advised that she was "looping in [her] colleague, Christian Dysart, who is also trying to connect with Mr. Martinez [Garcia], in case he has an update sooner than I do." *Id.*

52. On June 27, July 3, and July 29, 2024, Plaintiff's undersigned counsel continued to send emails to attorneys Blinn-Spears and Dysart. *See* Ex. I pp. 1-3.

10

53. On February 26, 2025, Plaintiff's counsel again sent an email to attorneys Blinn-Spears and Dysart. *See id.* p. 1.

54. Neither attorney, and neither Defendant, has ever responded to any of those emails or sent any other email to undersigned counsel after June 27, 2024. *See id.* pp. 1-3.

55. Furthermore, Defendants have never paid any of the amounts mandated by the settlement agreement approved by the Court on April 1, 2024. *See supra* ¶¶ 29-31, 38.

### C. PLAINTIFF'S OUTSTANDING FLSA AND OTHER DAMAGES RESULTING FROM DEFENDANTS' BREACH OF SETTLEMENT AGREEMENT

56. Pursuant to the court-approved settlement agreement, the payments Defendants were required, and are still required, to make to Plaintiff were and are intended to compensate Plaintiff for both actual and liquidated damages under the FLSA. *See* Ex. A ¶ 1. *See* D.E. 37 pp. 3-4.

57. As Defendants are in breach of the court-approved settlement agreement and have never made any payment mandated by the settlement agreement, Plaintiff has never been made whole or compensated with respect to his actual or liquidated damages under the FLSA. *See* D.E. 37 Part II.

## VII. CLAIM FOR RELIEF

### A. FIRST CLAIM FOR RELIEF (breach of court-approved settlement agreement requiring payment of FLSA and other damages)

58. Plaintiff adopts and realleges paragraphs one through 57 above as though fully set out herein.

59. Defendants violated their contractual and court-ordered duties to timely make all payments mandated by the court-approved settlement agreement to Plaintiff, including payments

11

for FLSA damages, as expressly required by the settlement agreement voluntarily executed by Defendants and approved by the Court.

60. As a result of those acts or omissions by Defendants, Defendants remain liable to Plaintiff for the unpaid wages or compensation owed to Plaintiff pursuant to the court-approved settlement agreement, as well as other compensatory damages that arose naturally and according to the usual course of things as a result of Defendants' breach(es) and that may be recovered under the common law of contracts.

WHEREFORE, Plaintiff prays that this Court:

(a) Find the Court has jurisdiction over Plaintiff's claims;

(b) Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff for compensatory damages in connection with Plaintiff's First Claim for Relief in an amount equal to the total amount of compensation due Plaintiff in compensatory damages for Defendants' breach(es) of the court-approved settlement agreement, as a result of which breach(es) Plaintiff suffered either an economic loss, lost wages, or other damages as a proximate result of Defendants' failure to comply with the express written terms of the court-approved settlement agreement between Plaintiff and Defendants;

(c) Award Plaintiff the costs of this action against Defendants, jointly and severally;

(d) Award Plaintiff reasonable attorney fees against Defendants, jointly and severally;

(e) Award Plaintiff prejudgment and post-judgment interest as allowed by law;

(f) Enjoin Defendants from any further violation of the settlement agreement or laws alleged herein; and,

(g) Award such other relief, including sanctions to enforce compliance, as this Court may deem just, equitable, and proper in this action.

This the 28th day of October, 2025.

Respectfully submitted,

/s/ Aaron V. Jacobson
Aaron V. Jacobson
N.C. State Bar No. 44065
Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, NC 27611
Phone: (919) 856-2180
Email: AaronJ@legalaidnc.org

Counsel for Plaintiff